902 A.2d 296 (2006)
386 N.J. Super. 533
Ronald SAHLI, Esq., Plaintiff-Respondent/Cross-Appellant,
v.
WOODBINE BOARD OF EDUCATION and Atlantic and Cape May Counties Association of School Business Officials Joint Insurance Fund, Defendants-Appellants/Cross-Respondents, and
Specialty National Insurance Company, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued Telephonically May 25, 2006.
Decided July 19, 2006.
*297 William S. Donio, Atlantic City, argued the cause for appellants/cross-respondents (Cooper Levenson April Niedelman & Wagenheim, attorneys; Mr. Donio and Howard E. Drucks on the brief).
Timothy E. Burke, Montclair, argued the cause for respondent/cross-appellant (Garrity, Graham, Favetta & Flinn, attorneys; Mr. Burke of counsel and on the brief).
Before Judges AXELRAD, PAYNE and SABATINO.
The opinion of the court was delivered by
PAYNE, J.A.D.
In this subrogation action, defendant Woodbine Board of Education appeals from an order of summary judgment entered against it by the trial court and a subsequent order holding it liable pursuant to N.J.S.A. 18A:16-6 for payment of the legal fees and costs in the amount of $94,279.45 incurred by Certain Underwriters of Lloyds of London, the legal malpractice insurer of their appointed board counsel, plaintiff Ronald Sahli, in the defense of an action in the Federal District Court instituted by T. Maureen Toy against the Board and various individuals, including Sahli. Toy's action was premised upon the Board's rejection of Toy's complaints that the school's special education program violated relevant statutory guidelines and that the Superintendent of Schools had uttered racist comments; the Boards' requirement that she obtain a mental evaluation; and Toy's allegedly involuntary resignation from employment. It was settled without contribution to the settlement by Sahli.
Sahli cross-appeals from the court's order denying his motion for summary judgment insofar as it sought coverage under insurance agreements with the defendant Atlantic and Cape May Counties Association of School Business Officials Joint Insurance Fund (JIF).[1] He also cross-appeals from an order denying recovery of attorney's fees and costs in connection with this subrogation action.

I.
Sahli, an attorney licensed to practice in the State of New Jersey, is employed by Ronald W. Sahli, P.A., a partner in the firm of Sahli and Padovani. At all relevant times, he conducted a general law practice concentrating on educational, transactional and construction law. In that connection, he represented several boards of education in New Jersey. On June 22, 2000, Sahli entered into an agreement to provide legal advice and assistance to the Woodbine Board of Education as its solicitor at a fee of $85 per hour plus reimbursement of certain expenses. He had served the Board as its solicitor for approximately six years before this appointment, while also representing other school boards in the same capacity.
Sahli's duties pursuant to the agreement with the Woodbine Board of Education included attending Board meetings, providing counsel and advice to Board members and carrying out the Board's specific instructions as related to legal matters *298 involving the District. He was also required under the contract to represent the Board in labor negotiations and to prepare and deliver to the Board relevant contracts arising from such negotiations. Sahli received no health or pension benefits from the Board, no withholding was taken from his compensation, and he did not receive a W-2 form.
Toy, the plaintiff in the employment suit in which Sahli was a defendant, had been employed as an Administrative Assistant in the Special Education Department of the Woodbine School District. Toy and Woodbine School Superintendent Bruce Kinter clashed repeatedly during her tenure over the District's alleged failure to comply with federal and State laws governing the special education program. In August 2000, Toy formally requested that the State conduct an investigation into the Special Education Department. Toy additionally accused Kinter of making racial comments regarding parents of District students.
On October 12, 2000, Toy appeared at a meeting of the Board to discuss her complaints regarding the Special Education Department, Kinter and others. The Board met in executive session to hear Toy, and because of confidentiality concerns, designated Sahli, rather than the Board's usual secretary, as secretary pro tem, responsible for providing the minutes of the session, as well as performing his usual duties as solicitor. The minutes, which were not complimentary to Toy and strongly suggested that she was emotionally imbalanced in her presentation,[2] disclosed advice by Sahli to the Board on various subjects as they related to Toy, including advice as to her removal. The minutes stated:
The Board requested that Sahli explain to them what the rights of the Board are to have [Toy] removed from her position. Sahli explained to the Board that if, in the judgment of the Board, the employee shows evidence of deviation from normal physical and mental health the Board can request the employee to undergo a physical and/or a psychiatric evaluation.
On November 20, 2000, Kinter sent a letter to Toy regarding her appearance before the Board, in which he stated:
As a result of your combative demeanor, rage and aggressive attitude, which was described as disjointed, unintelligible and confused demonstrating a lack of both physical and mental control and/or stability during the aforesaid meetings, the Board has directed me to send this letter. As a result of the aforesaid, the Board has directed me to arrange appointments with qualified medical personnel to have you examined physically and mentally in regards to your fitness to perform in the administrative position that you currently hold, and determine from their evaluations any risks with regard to students, their parents and other employees[.] [U]ntil such time as these reports are received you are on paid leave from the District.
Pursuant to New Jersey Statutes and Administrative Code, I paraphrase: a board of education [may] require you to undergo a physical and/or psychiatric and/or psychological examination, when in the judgment of the board, the employee [shows] evidence of the deviation from normal physical and/or mental health. You are entitled to a hearing in this regard if requested.
*299 Toy declined to undergo the requested examinations and eventually left the employment of the Woodbine School District.
Toy's legal complaint against the Board and Kinter was dated March 22, 2001. Following disclosure of the minutes of the Board's October 11 executive session, on April 1, 2002, the complaint was amended to name Sahli and other individuals as defendants. In that amended complaint, she sought damages from Sahli for violation of her civil free speech rights pursuant to 42 U.S.C.A. § 1983, for violations of the Law Against Discrimination, N.J.S.A. 10:5-1 to -49, and for impeding the course of justice with an intent to injure her by violating her rights to due process and equal protection in violation of 42 U.S.C.A. § 1985.[3] Factual allegations against Sahli stemmed from his conduct both as the Board's attorney and as its secretary pro tem at the Board meeting at which her complaints were discussed. Toy alleged that (1) Sahli, without reason to do so, had told her attorney at an August 23, 2000 Board meeting that the Board would subject Toy to a psychiatric examination; (2) on October 11, 200 Sahli had disparaged Toy's complaints in statements to her attorney; (3) the minutes of the October 11 executive session did not faithfully reflect what occurred and were calculated to denigrate Toy by making her appear mentally unstable; (4) on October 15, 2000 Sahli attempted to intimidate Toy by informing her attorney that she would be the subject of the next fifteen Board meetings; (5) Sahli had advised Toy on October 11 that her allegations of racial slurs by Kinter must be presented administratively through an affirmative action complaint and not directly to the Board, and then had interfered with the affirmative action investigation by causing a biased investigator to be named; and (6) defendants, including Sahli, utilized Toy's bi-polar condition as a pretense to silence, discredit and undermine her legitimate complaints regarding the special education program and Kinter's racism and to cause her constructive discharge.

II.
To determine whether Sahli had a right to indemnification for legal fees incurred in the defense of Toy's suit, we must construe the phrase "person holding any office, position or employment" found in the indemnification provisions of N.J.S.A. 18A:16-6, which states:
Whenever any civil action has been or shall be brought against any person holding any office, position or employment under the jurisdiction of any board of education, including any student teacher or person assigned to other professional pre-teaching field experience, for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment or student teaching or other assignment to professional field experience, the board shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom; and said board may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.
The motion judge held that Sahli was entitled to indemnification by the Woodbine Board of Education as the result of the breadth of the phrase that we have *300 quoted, but that neither the general liability nor the educator's legal liability insurance coverage provided under the JIF policy was applicable to his claim. We construe the statute more narrowly than the motion judge did and, determining that it does not cover a school board attorney such as Sahli, we reverse.
No reported New Jersey case concerns the right of a board attorney to indemnification pursuant to this statute. Nonetheless, in reaching our conclusion, we find guidance from precedent construing the indemnification statute in other contexts, and in particular from Hartmann v. Maplewood School Transp. Co., 106 N.J.Super. 187, 254 A.2d 547 (Law Div.1969), aff'd o.b., 109 N.J.Super. 497, 263 A.2d 815 (App.Div.), certif. denied, 57 N.J. 124, 270 A.2d 27 (1970). There, it was held that a bus driver employed by a company under an independent contract with a board of education to transport school children was not entitled to indemnification under N.J.S.A. 18A:16-6 for his negligence in driving a school bus. That case can of course be read to establish the principle that a third party whose relationship to a board of education is purely contractual is not a "person holding any office, position or employment under the jurisdiction of any board of education," a principle that is facially applicable to Sahli.
However, we additionally find significance in the court's discussion of the legislative history of the statute.[4] First enacted as L. 1937, c. 125, it provided indemnification for "[a]ny teacher, school nurse, school dentist, principal, supervisor, supervising principal, superintendent or janitor in any of the public schools of this State, against whom an action in damages is instituted for any act or acts arising out of, or in the course of his or her employment." A 1938 amendment, L. 1938, c. 311, narrowed the scope of indemnity, requiring a school board only to save harmless "all teachers and members of supervisory and administrative staff" from financial loss arising out claims for damages. As the statement accompanying the 1938 bill (quoted in Hartmann, supra, 106 N.J.Super. at 191-92, 254 A.2d 547) makes clear, the Legislature's concern then was with the potential financial exposure of "teachers" as the result of injuries to children while on school premises.
This feeling of liability and the fact that teachers may lose their savings of a number of years because of suits brought against them for injuries has caused much perturbation of mind and has resulted in the belief that boards should protect them against such liability resulting in the course of their duties. [Id. at 192, 254 A.2d 547.]
The statute was further amended in 1955 (L. 1955, c. 85), in 1965 (L. 1965, c. 205) and 1967 (L. 1967, c. 167) before its incorporation into N.J.S.A. 18A:16-6 as the result of the Legislature's revision of school laws effective January 11, 1968. The phrase "person holding any office, position or employment" under the jurisdiction of any board of education first appears in the 1955 amendment and remains thereafter, as does indemnification for injuries to property. The statement accompanying the bill to an extent illuminates the reason for the inclusion of the phrase. It states:
The purpose of this bill is to give protection to every person holding office, position or employment under the jurisdiction of a board of education from *301 financial loss arising from alleged negligence or other act happening in the discharge of his duties and within the scope of his employment. P.L. 1938, c. 311 presently protects teachers and members of the supervisory and administrative staff from such financial loss arising from personal injury. Other employees including janitors who maintain and repair the grounds and buildings have no such protection and their compensation is not such as to imply that they have been paid or are paid to assume such risks.
[Hartmann, supra, 106 N.J.Super. at 192, 254 A.2d 547.]
It thus appears that the Legislature intended the term "position" to refer to an expanded class of board employees, and not those with some other relationship to the board.
The 1965 amendment included student teachers within the protected group, and a 1977 amendment (L. 1977, c. 216) included, as well as student teachers, any "person assigned to other professional pre-teaching field experience." The statement accompanying that amendment provided:
The preparation of teachers in New Jersey has kept pace with the most significant changes throughout the country. Of primary importance among those changes is the increased emphasis on pre-student teaching experiences for teacher education students. Instead of the old pattern where college students were sent out to student teach in their senior year for their only contact with boys and girls, college students today are assigned to a wide variety of classroom experiences in their freshman, sophomore, and junior years. This proposed revision would extend the same protection to all students in teacher education programs who are assigned to public schools as is now provided only to those actually assigned to student teaching.
[Sponsors' Statement to A. 922 (September 13, 1977).]
See also Assembly Education Committee Statement to A. 922 (November 9, 1976) (noting that the amendment extends protection to "all students" in teacher education programs who are assigned to a public school in any pre-teaching capacity).
Finally, a 2001 amendment (L. 2001, c. 178), which expands indemnification to include "administrative" actions and "other legal proceedings," is significant as the result of the implicit interpretation of the phrase "person holding any office, position or employment" under school board jurisdiction by the sponsors of the bill as including only "school board members and school board employees." Sponsors' Statement, A. 1755. See also Assembly Education Committee Statement (October 16, 2000), Assembly Appropriations Committee Statement (November 9, 2000) and Senate Education Committee Statement (February 26, 2001), each of which confines indemnification to school board members and employees. The Governor's News Release of July 27, 2001 contains the same limiting language.
What is noteworthy about this statutory history is that none of the various amendments that we have outlined has referenced school board attorneys or suggested their coverage under the statute's indemnification provisions. The focus has been solely upon school board members and school employees, and those preparing for teaching careers.
This conclusion is distilled in Hartmann by Judge Fulop who, after providing the legislative history from which we have liberally borrowed, concluded: "These statutes have been construed to be for the sole benefit of the school employees covered. . . . No case has been cited or found *302 extending the right of indemnification to any person not an employee of a school board."[5]Hartmann, supra, 106 N.J.Super. at 192-93, 254 A.2d 547.
Although thirty-seven years have elapsed since Judge Fulop's decision, his observation remains true. In this regard, we particularly note the Supreme Court's decision in Gilborges v. Wallace, 78 N.J. 342, 396 A.2d 338 (1978), a case in which a passenger riding in a car driven by a school student was injured in a collision between their car and a truck. Although the Court found a jury question to exist as to whether the student driving the car was acting as an agent for the school board at the time of the accident, it nonetheless held that the indemnity provisions of N.J.S.A. 18A:16-6 did not apply to the student, stating:
The statute, originally enacted to protect only teachers, has been expanded to cover all school employees when acting within the scope of their employment. However, we do not understand the legislative intent as expressed in the statute to provide indemnification to non-employees of a board of education even though some agency relationship may exist.
[Id. at 352, 396 A.2d 338.]

II.
We have extensively recounted the legislative and decisional history of N.J.S.A. 18A:16-6 to demonstrate that indemnification of a third-party independent contractor operating as board solicitor was not the intent of the Legislature in enacting that statute or any of its amendments, and that its intent was instead to confine indemnification to Board members, employees, and students preparing for teaching careers. We note additionally that the words office, position and employment have not been construed in other public employment contexts in the fashion espoused by Sahli.
The construction of these terms has arisen in the context of the common-law "no work, no pay" rule that one appointed to public office has no right to back pay as compensation for a period of wrongful termination. City of Hoboken v. Gear, 27 N.J.L. 265 (Sup.Ct.1859); Stuhr v. Curran, 44 N.J.L. 181 (E. & A. 1882). In that connection, it was stated in Fredericks v. Bd. of Health of West Hoboken, 82 N.J.L. 200, 82 A. 528 (Sup.Ct.1912) that:
An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties.
* * *
A position is analogous to an office, in that the duties that pertain to it are permanent and certain, but it differs from an office, in that its duties may be non-governmental and not assigned to it by any public law of the state.
[Id. at 201, 82 A. 528.]
Nonetheless, it has been held that the principal distinction for purposes of application of the rule is between public officer and public employee, and the distinction between one holding a position and one having "mere employment" is "one of convenience only" there being only two principal classificationsoffice and employment. The distinction between the two categories *303 lies in whether a master and servant relationship exists. Ross v. Freeholders of Hudson, 90 N.J.L. 522, 526, 102 A. 397 (E. & A.1917).
The absence of clarity in the distinctions developed between office, position and employment, most recently noted by the Supreme Court when it abolished the no work, no pay doctrine in State v. Int'l Fed. of Prof'l and Tech'l Eng'rs, Local 195, 169 N.J. 505, 535, 780 A.2d 525 (2001), provide fuel for the argument that a determination of this case should not turn on the divination of some special significance to the word "position" as it has appeared in the indemnity statute since 1955. Nonetheless it is also significant that at least in this context, "positions" have remained firmly lodged within the category of employment to which Sahli does not belong.

III.
As a final matter, Sahli has made an argument in this case that the claims against him arose out of his conduct in the capacity of secretary pro tem during the executive session of the School Board on October 11, 2000, and that because he would have been entitled to indemnification if he had been a school board member or employee functioning as secretary, his status as board solicitor should not operate as a bar to a similar result. We reject that argument, finding that Sahli did not act in the capacity of a scrivener, as he claims.[6]
Although Sahli is correct in noting that he was not named as a defendant in Toy's action until some time after she had an opportunity to review the minutes of the October 11 executive session, her allegations against him do not focus on any ministerial act of note-taking on Sahli's part. In large measure, they focus instead on the advice that he gave to the Board regarding available means for removing her from her position, his alleged manipulation of facts (including the executive session minutes) to suggest mental instability on her part, and his conduct in allegedly thwarting her efforts to expose the alleged racism of Kinter and the deficiencies existing in the administration of the district's special education program. Thus, a factual foundation for Sahli's argument is absent.
Further, a review of the October 11 minutes confirm the conclusion of the motion judge that, throughout the events underlying Toy's action, Sahli's "primary function at the time was as a solicitor, that his presence at this meeting was the result of his acting as solicitor, that he would not, at least as [the judge understood] this record have been present but for that, and that he was enlisted to act as a secretary essentially because he was present." Those minutes are replete with requests to Sahli by Board members for his advice and expressions of that advice. Moreover, those recitations in the minutes that could be deemed to be "factual" in no respect resemble a transcript, but are obviously an editorial synthesis informed by Sahli's experience as a board attorney and his concerns as legal advisor to the Board in its interactions with Toy. In these circumstances, the statute provides no grounds for indemnification.

IV.
In sum, none of the legal arguments that have been raised in connection with this *304 appeal satisfy us that Sahli should be counted among those to whom the indemnification provisions of N.J.S.A. 18A:16-6 apply. Although not essential to our determination of the matter, we note that Sahli is a professional who, in the ordinary course of his business, has obtained insurance to cover risks such as that to which he was exposed by Toy's suit. Thus the equitable ground for granting indemnity, recognized in the case of teachers and other school personnel who are not similarly protected, does not exist here.[7] Moreover, we are mindful of the effect of an unexpected increase in costs to a school district such as Woodbine's that could occur, were we to find, despite the absence of any guiding precedent, that indemnification was required in this instance.
Because we are constrained to reverse the order granting summary judgment against the Woodbine Board of Education, finding no statutory grounds for indemnification, we need not address the further issues of insurance recovery under either of the JIF coverages or Sahli's entitlement to reimbursement of fees in connection with this subrogation suit.
The orders granting summary judgment against Woodbine Board of Education and requiring its payment to Sahli of the sum of $94,279.45 is reversed. Summary judgment in favor of defendant Atlantic and Cape May Counties Association of School Business Officials Joint Insurance Fund is affirmed, as is the court's order denying reimbursement to Ronald Sahli for the fees and costs incurred in this action.
NOTES
[1] Sahli's claims against Specialty National Insurance Company were voluntarily dismissed.
[2] Toy suffers from a bi-polar condition that she alleged did not affect her job performance.
[3] Sahli is not named as a defendant in a count charging violations of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8, although the omission appears inadvertent, since it constitutes the primary basis for Toy's action.
[4] A more abbreviated legislative history appears in Titus v. Lindberg, 49 N.J. 66, 79, 228 A.2d 65 (1967).
[5] The judge recognized the expansion of indemnity to student teachers, but the absence of decisions concerning them.
[6] We do not decide whether a board attorney acting solely as scrivener could obtain statutory indemnification. However, we would be hesitant, in a suit seeking damages from an attorney who claimed to have been acting in a dual capacity, to base a decision on a characterization of the attorney's conduct, forecasting that our concentration on the minutia of behavior and context would lead to the generation of precedent that was irreconcilable.
[7] There may be public policy reasons for an expansion of statutory indemnity to include school board attorneys. However, such arguments should be presented to the Legislature.