938 A.2d 923

RONALD W. SAHLI, ESQ., PLAINTIFF–APPELLANT v. WOODBINE BOARD OF EDUCATION, ATLANTIC AND CAPE MAY COUNTIES ASSOCIATION OF SCHOOL BUSINESS OFFICIALS JOINT INSURANCE FUND AND SPECIALTY NATIONAL INSURANCE COMPANY, DEFENDANTS–RESPONDENTS.

Argued September 25, 2007—Decided January 30, 2008.

*Timothy E. Burke,* argued the cause for appellant (*Garrity, Graham, Favetta & Flinn,* attorneys).

*William S. Donio,* argued the cause for respondents (*Cooper Levenson April Niedelman & Wagenheim,* attorneys; *Gerard W. Quinn,* on the brief).

Justice WALLACE, JR., delivered the opinion of the Court.

This case requires us to determine whether a school board attorney is entitled to indemnification under *N.J.S.A.* 18A:16–6, which provides for indemnification in defense of a civil action for "any person holding any office, position or employment" with a board of education. A secondary issue is whether the Woodbine Board of Education's (Board) insurance policy requires the insurer to reimburse the Board's attorney for counsel fees incurred in defense of the civil action.

The trial court concluded that the statute provided indemnification for the attorney of the Board, but that the insurance policy excluded coverage for the attorney. Both sides appealed. In a published opinion, the Appellate Division held that the Board's attorney is not entitled to indemnification under the statute, and the insurance policy does not require the insurer to defend or

reimburse the attorney for his litigation expenses. We granted the Board's attorney's petition for certification.

We hold that *N.J.S.A.* 18A:16–6 does not mandate that the Board indemnify its attorney for the defense of a civil action against him in his capacity as Board solicitor. However, because the Board's attorney in this case was also sued in his capacity as secretary pro tem to the Board, he is entitled to indemnification for his conduct in that position. Similarly, he is not entitled to insurance coverage as the attorney to the Board, but he is entitled to insurance coverage as a volunteer in acting as secretary.

## I.

Plaintiff Ronald W. Sahli, a partner in the law firm of Sahli and Padovani, was appointed solicitor of the Board and served in that capacity for several years before his current appointment. He also represented several other school boards in New Jersey. As Board solicitor, plaintiff attended meetings, met with Board members on a regular basis, provided counsel and advice to the Board whenever requested, and carried out the Board's specific instructions as related to legal matters involving the school district. Plaintiff received no health or pension benefits from the Board, and income tax withholdings were not deducted from his fees.

T. Maureen Toy (Toy) was an employee of the Woodbine Board of Education for thirteen years until her voluntary separation in 2001. During her tenure, Toy served in various positions including special education teacher. She was promoted to Administrative Assistant for Special Education in September 1998. Toy did not always agree with District Superintendent Bruce Kinter's (Kinter) handling of the Special Education Department. In a written complaint in November 1999, Toy complained that Kinter failed to view the school's problems realistically and that his administration was a "farce."

In August 2000, Toy sent Kinter a letter in which she claimed that Kinter intentionally violated federal and state laws governing the Special Education program. She also accused Kinter of

threatening to terminate her if she failed to comply with his instructions not to follow federal and state laws governing the Special Education program.

On August 15, 2000, Toy wrote a letter to Dr. Barbara Gantwerk of the State Office of Special Education requesting an investigation of the Woodbine School District's Special Education Department for possible violations of federal and state law. On September 14, 2000, Toy appeared before the Board and publicly expressed her concerns. On September 18, 2000, Toy informed the Board's personnel committee about racial slurs made by Kinter against parents, a child, and a fellow staff member. Thereafter, Toy sent a letter to Board President Horace Youman requesting an opportunity to confront and discuss her grievances with Kinter before the entire Board.

On October 12, 2000, the Board convened an executive session in response to Toy's letter. Board members requested that the Board's regular secretary be excluded from the meeting because of past concerns regarding the secretary's alleged breaches of confidentiality. As a result, the Board appointed plaintiff as secretary pro tem for the executive session.

The meeting with Toy was contentious. Plaintiff and members of the Board questioned Toy about the allegations she made against Kinter. After Toy was excused, Board members discussed their concerns regarding Toy's medical and psychiatric conditions given her conduct during the meeting. In response to the Board's concerns, plaintiff explained that if an employee displayed evidence of mental health issues, the Board could request that the employee undergo a psychiatric evaluation. The Board instructed Kinter to review Toy's personnel file and give his recommendation concerning Toy's ability to perform her duties at the next meeting. Plaintiff prepared the minutes of the October 12, 2000, executive session that covered six full single-spaced pages and described Toy's behavior in detail. The minutes were approved, but they were kept confidential.

At the November 16, 2000, Board meeting, plaintiff was again appointed secretary pro tem for the meeting. Toy was also invited to attend. During the meeting, Board members questioned her about the comments she made during the October 12, 2000, executive session. After Toy was excused from the meeting, Kinter recommended that Toy be placed on paid administrative leave pending the results of physical and psychiatric evaluations of her ability to perform her job.

On November 20, 2000, Kinter sent Toy a letter stating that she was required to arrange physical and mental examinations to determine her fitness to perform her job. Kinter also informed Toy that she was entitled to a hearing. Toy neither submitted to the requested examinations nor requested a hearing before the Board. Later, in January 2001, she resigned from her position.

In March 2001, Toy filed a complaint in Superior Court against the Board and Kinter. She alleged that the Board improperly utilized her bipolar condition as a pretense to silence her complaints, and that its actions constituted a retaliatory action taken against her in violation of the Conscientious Employees Protection Act (CEPA). The matter was subsequently removed to federal court.

Toy's initial complaint did not name plaintiff as a defendant. However, during the course of discovery, Toy's attorney obtained copies of the minutes of the Board's executive sessions held on October 12, 2000, and November 16, 2000. On April 1, 2002, Toy filed an amended complaint. She alleged that plaintiff, while engaged in the course and scope of his duties as solicitor and while performing the duties of secretary pro tem, committed wrongful acts against her. Toy alleged in part that the Board appointed plaintiff as secretary pro tem; that plaintiff did not take any notes or make any other recording of the October 12, 2000, meeting; that the Board's executive session minutes for that meeting did not faithfully reflect or recount the executive session; that the minutes were calculated to denigrate her by making her appear to be mentally unstable; and that plaintiff prepared the minutes.

Plaintiff moved to dismiss the complaint for failure to file an Affidavit of Merit pursuant to the statutory requirements for malpractice actions. On February 20, 2003, Toy's attorney wrote a letter to plaintiff's attorney explaining that Toy did not contend that plaintiff was professionally negligent and therefore an Affidavit of Merit was not necessary. Thereafter, the parties agreed to enter into a consent order to that effect, and plaintiff withdrew his motion to dismiss the amended complaint.

On March 10, 2003, plaintiff demanded insurance coverage under the Atlantic and Cape May Counties Association of School Business Officials Joint Insurance Fund Policy (Joint Fund), which had previously furnished separate counsel for the Board and Kinter in defense of Toy's complaint. Plaintiff also requested that the Board indemnify and defend him pursuant to *N.J.S.A.* 18A:16–6. The Claims Administrator for the Joint Fund denied coverage for plaintiff because he was an independent contractor hired by the Board, and he did not satisfy the policy definition of an insured. Similarly, counsel for the Board in the Toy matter wrote to plaintiff on June 23, 2003, denying his request for indemnification and a defense because "*N.J.S.A.* 18A:16–6 applies only to officers and employees, not independent contractors such as a school board solicitor."

In October 2003, plaintiff instituted this action to compel the Board and the Joint Fund to satisfy their obligation to reimburse him for the amounts spent in defense of the claims against him in the Toy matter.[1] Both sides moved for summary judgment. The trial court held that plaintiff was entitled to indemnification from the Board under *N.J.S.A.* 18A:16–6, but that he was not entitled to coverage under the Joint Fund policy because he was not an insured under the policy.

---

[1] Plaintiff's professional liability carrier provided legal representation for plaintiff in the Toy matter. That case was ultimately settled. Plaintiff did not contribute to the settlement amount.

Plaintiff and defendants appealed. The Appellate Division reversed the trial court's grant of summary judgment in favor of plaintiff pursuant to *N.J.S.A.* 18A:16–6. *Sahli v. Woodbine Bd. of Educ.*, 386 *N.J.Super.* 533, 546, 902 *A.*2d 296 (2006). After an extensive examination of the legislative history of the statute, the panel reasoned that a board solicitor was not one of the persons contemplated by the Legislature when it enacted *N.J.S.A.* 18A:16–6. *Id.* at 543, 902 *A.*2d 296. The panel also rejected plaintiff's contention that Toy's claims arose out of his service as secretary pro tem. *Id.* at 544, 902 *A.*2d 296. The panel held that plaintiff's primary function was that of Board solicitor and that Toy's claims against him arose out of that role. *Id.* at 545, 902 *A.*2d 296.

Because the Appellate Division decision did not rule on plaintiff's insurance coverage claim, plaintiff moved for reconsideration. The panel granted reconsideration, and in a supplemental opinion, concluded that because plaintiff was essentially acting as Board solicitor rather than the Board secretary at the October 12, 2000, executive session, the Joint Fund was not required to provide representation for him.

We granted plaintiff's petition for certification. *Sahli v. Woodbine Bd. of Educ.*, 189 *N.J.* 429, 915 *A.*2d 1052 (2007).

## II.

Plaintiff argues that the plain meaning of *N.J.S.A.* 18A:16–6, which affords indemnity to any "person holding any office, position or employment under the jurisdiction of any board of education," demonstrates that the Legislature intended to include classes of persons such as attorneys, who provide services for the benefit of the Board, and who may be sued for the manner in which they perform those services. Plaintiff also urges that Toy's amended complaint clearly articulated allegations against him in his capacity as secretary pro tem in the recording of the minutes, and that those allegations entitle him to a defense under the statute as Board secretary regardless of whether he also acted as solicitor of the Board. Similarly, plaintiff argues that because Toy's com-

plaint alleged he breached a duty as Board secretary, he was entitled to coverage under the policy as a volunteer of the Board when he served in that capacity.

In contrast, defendants contend that the Appellate Division properly analyzed the relevant case law and legislative history to conclude that *N.J.S.A.* 18A:16–6 does not apply to a solicitor of the Board. Defendants add that the panel correctly noted that as a professional with his own liability coverage for his legal practice, plaintiff had insurance coverage for the risks resulting from Toy's suit. Defendants argue that plaintiff was not sued because he was serving as secretary pro tem but that he was sued in his capacity as solicitor to the Board. Finally, defendants contend that both the trial court and the Appellate Division correctly concluded that plaintiff was not an insured under the Joint Fund policy. Defendants note that a contrary conclusion would lead to further litigation to decide the proper allocation of fees in the defense of plaintiff in his capacity as solicitor and in his capacity as secretary.

## III.

### A.

We turn first to plaintiff's contention that as Board solicitor he is entitled to indemnification by the Board under *N.J.S.A.* 18A:16–6 to defray all costs of defending the Toy complaint. That statute provides,

> [w]henever any civil action has been or shall be brought against any person holding any office, position, or employment under the jurisdiction of any board of education, including any student teacher or person assigned to other professional pre-teaching field experience, for any act or omission arising out of and in the course of the performance of the duties of such office, position, employment or student teaching or other assignment to professional field experience, the board shall defray all costs of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom; and said board may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses.

> [*N.J.S.A.* 18A:16–6.]

■ The Appellate Division panel extensively recounted the legislative and decisional history of *N.J.S.A.* 18A:16–6 in reaching its conclusion that the Legislature's "focus was solely upon school board members and school employees, and those preparing for teaching careers," and the statute did not include a board solicitor as a "person holding any office, position or employment" of a school board. *Sahli, supra,* 386 *N.J.Super.* at 539–42, 902 *A.*2d 296. We are in substantial accord with the reasoning of the Appellate Division and adopt it as our own. We find no need to restate the Appellate Division's thorough analysis of that issue. We conclude that a solicitor of a school board is not entitled to indemnification under *N.J.S.A.* 18A:16–6.

### B.

■ Plaintiff contends that even if he is not entitled to indemnification from the Board as its solicitor, he is entitled to indemnification in his capacity as secretary pro tem. The Appellate Division rejected that argument because it found that plaintiff was acting as the Board solicitor and not as secretary to the Board. *Sahli, supra,* 386 *N.J.Super.* at 544–45, 902 *A.*2d 296.

Because both parties filed motions for summary judgment, and the Appellate Division found in favor of defendants on this issue, we consider the facts in a light most favorable to plaintiff. *R.* 4:46–2(c); *see also Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.,* 189 *N.J.* 436, 445, 916 *A.*2d 440 (2007); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995). Viewing the facts in that fashion, we part company with the Appellate Division in its conclusion that plaintiff was not acting as secretary of the Board. A review of Toy's complaint and the statement of material facts in support of plaintiff's motion for summary judgment satisfies us that Toy sued plaintiff in his capacity as both secretary pro tem and as solicitor.

In her initial complaint under CEPA, Toy named the Board and Kinter as defendants, but did not name plaintiff or individual members of the Board. Toy alleged in that complaint that there

were no minutes or tape recordings of the executive sessions of the Board. However, during discovery, Toy's attorney obtained copies of the minutes of the executive sessions held on October 12, 2000, and November 19, 2000. At her deposition in early 2002, Toy testified that when she read the minutes she could not believe what she read. She disputed those portions of the minutes that characterized her as "combative," "engaged," "disjointed," "unintelligible," "confused," "abusive," and lacking in "mental control." Toy stated that she believed that the minutes were contrived to make her look bad. After Toy obtained copies of the minutes, she filed an amended complaint in which she named plaintiff as a defendant. She alleged that plaintiff was employed as solicitor to the Board and was appointed secretary for the October 12, 2000 meeting. Toy also alleged that the minutes were not published until December 2000; that they did not faithfully reflect or recount the executive session; and that they were calculated to denigrate her by making her appear to be mentally unstable.

It is not disputed that if the regular secretary of the Board had been sued because of the manner in which the minutes were drafted, the secretary would be covered by the statute as a person holding a "position" of the Board. *See N.J.S.A.* 18A:17–5; *N.J.S.A.* 18A:17–14.1. Plaintiff was appointed to take the place of and perform the role of secretary for the executive session. Although a temporary position, it was nevertheless a position of the Board. We find no justification to avoid the application of the statute merely because the position was temporary. If plaintiff were sued in part because of his temporary position as secretary to the Board, then to the extent he was sued in that capacity, he is entitled to indemnification under *N.J.S.A.* 18A:16–6.

Indeed, Toy also made other allegations against plaintiff in his capacity as Board solicitor. For example, she alleged that plaintiff informed her attorney that he caught Toy telling fairy tales; that he and others, prior to the meeting of October 12, 2000, concocted the conclusion that her allegations of racism against Kinter were fairy tales or the allegations of a mentally unstable woman; and

that plaintiff told her that her special education and racist allega-
tion complaint had eroded the Woodbine Community. Although
plaintiff is not entitled to indemnification in his capacity as solici-
tor of the Board, he is entitled to indemnification in his capacity as
secretary pro tem.

In short, viewing the evidence in the light most favorable to
plaintiff, the evidence supports the finding that plaintiff held a
temporary position on the Board and that he was named as a
defendant in the Toy action in part because of the manner in
which he performed that temporary position. We conclude that to
the extent plaintiff was sued in his capacity as secretary pro tem,
he is entitled to indemnification under *N.J.S.A.* 18A:16–6. We
remand to the trial court to allocate the costs of defending the Toy
action between plaintiff being sued in his capacity as the solicitor,
for which he is not entitled to reimbursement, and in his capacity
as secretary pro tem, for which he is entitled to reimbursement
under *N.J.S.A.* 18A:16–6.

## IV.

We turn now to plaintiff's contention that the Joint Fund is
required to reimburse him for his counsel fees.

Preliminarily, we observe some general principles that
apply to the interpretation of an insurance policy. It is evident
that the court should give the words of the policy "their plain,
ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590,
595, 775 *A.*2d 1262 (2001). If the words of the policy are clear, the
policy should be interpreted as written. *President v. Jenkins*, 180
*N.J.* 550, 562, 853 *A.*2d 247 (2004) (citing *Gibson v. Callaghan*, 158
*N.J.* 662, 670, 730 *A.*2d 1278 (1999)). However, if the language of
the policy will support more than one meaning, "courts [should]
interpret the contract to comport with the reasonable expectations
of the insured." *Zacarias, supra,* 168 *N.J.* at 595, 775 *A.*2d 1262
(citing *Gibson, supra,* 158 *N.J.* at 671, 730 *A.*2d 1278). Consistent
with that approach, "policy exclusions must be narrowly . con-
strued; [and] the burden is on the insurer to bring the case within

the exclusion." *Princeton Ins. Co. v. Chunmuang*, 151 *N.J.* 80, 95, 698 *A.*2d 9 (1997).

The insurer has a duty to defend the insured "when the complaint states a claim [that constitutes] a risk." *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 173, 607 *A.*2d 1255 (1992). The duty to defend is generally determined by the language of the policy. When the complaint and the policy correspond, the insurer must defend the suit. *Ibid.* Further, if "multiple alternative causes of action," are alleged in the complaint, the insurer's duty to defend continues "until every covered claim is eliminated." *Id.* at 174, 607 *A.*2d 1255. Any ambiguity in the complaint, "should be resolved in favor of the insured and thus in favor of coverage." *Id.* at 173, 607 *A.*2d 1255.

We now apply those legal tenets to the case at hand. The Joint Fund policy contains a General Liability Coverage section and an Educator's Legal Liability Insurance Coverage section. Both of those liability sections contain substantially identical language defining who is an "insured." The relevant portion of the definition of insured provides that an insured includes "[a]ll persons who were, now are, or shall be elected during the Coverage Period or appointed or employed members of the board of education" and "all employees and *volunteers* while acting within the scope of their duties for a member." (Emphasis added).

In addition, the Educator's Liability Insurance Coverage section contains an exclusion for "any independent contractor, person(s) or entities who are on retainer, are a consultant or are under contract for services, for an Insured." The Appellate Division in its supplemental opinion found that plaintiff, as the Board solicitor, did not qualify as an insured based on that exclusion. We agree that the plain language of the policy excludes coverage for plaintiff in his capacity as solicitor to the Board.

Nevertheless, plaintiff also functioned as a volunteer when he was appointed to serve as secretary pro tem. That was not one of

plaintiff's normal responsibilities as solicitor to the Board. When plaintiff was appointed by the Board to fill a role regularly performed by the secretary of the Board, he was acting as a volunteer. Thus, plaintiff comes within that part of the definition of insured that includes "volunteers while acting within the scope of their duties for a Member." We conclude that plaintiff is entitled to coverage under the Joint Fund for defense of Toy's complaint against him in his capacity as secretary pro tem.

## V.

In summary, plaintiff was sued in part for the performance of his duties while serving as secretary pro tem and in part for his performance as solicitor for the Board. That is, plaintiff acted in dual roles for the Board, and Toy's amended complaint made allegations against plaintiff in both roles. Consequently, to the extent plaintiff incurred legal fees in his capacity as secretary pro tem, both *N.J.S.A.* 18A:16–6 and the Joint Fund afford him protection. We remand to the trial court to determine the proper allocation of fees that the Board and the Joint Fund should reimburse plaintiff for his expenses arising out of the defense of claims made against him as secretary pro tem.[2] *See SL Indus. Inc. v. Am. Motorists Ins. Co.*, 128 *N.J.* 188, 215, 607 *A.*2d 1266 (1992) (insurer obligated "to pay only those defense costs reasonably associated with claims covered under the policy").

## VI.

We affirm in part and reverse in part. We remand to the trial court for further proceedings consistent with this opinion.

---

[2] Defendants assert in their brief that if there is coverage for any claims arising from the manner in which plaintiff acted as secretary pro tem, then other questions may arise concerning the primary coverage as between the Board's policy of insurance and plaintiff's own professional insurance policy. Those issues were not addressed before us. Consequently, the parties may raise those issues on remand.

Justice ALBIN, concurring in part and dissenting in part.

School board attorneys will be surprised to learn from today's majority opinion that they do not hold a "position" in local government. As a result of that crabbed interpretation of *N.J.S.A.* 18A:16–6, when a lawsuit—however frivolous—is filed against the members of a school board, its administrators, and its solicitor arising from the performance of their duties, the school board will indemnify everyone but its appointed attorney. Because that interpretation is at odds with the plain and common-sense meaning of the statutory text, I respectfully dissent.

Plaintiff Ronald W. Sahli, Esq., was appointed by the Woodbine Board of Education to be its Solicitor. As a consequence of performing his duties as Solicitor, Sahli, along with the Board, its superintendent, and others, was sued by an employee of the Board. The Board in no way questions the quality of Sahli's service as Solicitor in the matter involving that employee—a matter in which he was looking after the best interests of the Board. But when trouble arrived in the form of a lawsuit, the Board cut loose its Solicitor, refusing to defend or indemnify him. To reach that seemingly discordant result, the Board relied on *N.J.S.A.* 18A:16–6. That statute requires that in the case of a "civil or administrative action or other legal proceeding ... arising out of and in the course of the performance of [one's] duties," a school board indemnify *"any person holding any office, position or employment* under the jurisdiction of" the board. *Ibid.* (emphasis added).

The Board took the approach that because Sahli was paid as an independent contractor, he did not hold an office, position, or employment with the Board for purposes of *N.J.S.A.* 18A:16–6. Admittedly, Sahli was not an employee of the Board; he was an independent contractor. But just as clearly, the statute provides coverage to more than employees doing the Board's business; otherwise, there would be no reason for language protecting office- and position-holders. Stated differently, the statute provides indemnification to office- and position-holders regardless of

whether they are employees of the school district. In interpreting *N.J.S.A.* 18A:16–6, we are obliged to give meaning to each word of the statute and to avoid any construction that renders language useless. *See Green v. Auerbach Chevrolet Corp.*, 127 *N.J.* 591, 598, 606 *A.*2d 1093 (1992) (quoting *Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety*, 120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990)) ("[A] court 'should try to give effect to every word of the statute, and should not assume that the Legislature used meaningless language.'"). If we presume, as we must, that the Legislature intended every word to carry meaning, then it follows that an independent contractor, performing duties on behalf of the Board, is not precluded from holding an office or position within the purview of the statute.

To determine whether Sahli held an office or position, we must first understand what the Legislature contemplated when it used those terms in *N.J.S.A.* 18A:16–6. Because the statute nowhere defines the terms "office" or "position," we must also presume that the Legislature was familiar with how those terms were generally understood in the common law:

> An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties.
>
> . . . .
>
> A position is analogous to an office, in that the duties that pertain to it are permanent and certain, but it differs from an office, in that its duties may be non-governmental and not assigned to it by any public law of the state.
>
> [*Fredericks v. Bd. of Health of W. Hoboken*, 82 *N.J.L.* 200, 201, 82 *A.* 528 (Sup.Ct.1912) (citations omitted).]

Thus, the essential duties attaching to a position, under the common law, must be "permanent and certain." *Ibid.* With that in mind, we turn to the duties assigned to a Solicitor of the Woodbine Board of Education.

According to his contract with the Board, Sahli "agree[d] to perform the professional services ordinarily provided by a school district Solicitor within the State of New Jersey." That language clearly indicates that there was a common understanding of the general duties of a Solicitor that did not have to be detailed in the

contract. The very notion that the Solicitor's responsibilities were well-recognized suggests that his duties were of a permanent and certain nature. In addition, the contract's job description required that Sahli attend Board meetings, represent the Board in collective negotiations with its employees, and serve as its "chief spokesperson at all bargaining sessions."

Despite those permanent and certain duties that the Board gave to Sahli, it now claims that it gave him the empty title of Solicitor, which applied to no position within the school board hierarchy. The Board's uncharitable interpretation of the scope of *N.J.S.A.* 18A:16-6 strips the attorney who did its bidding of the statute's protections. That interpretation cannot be squared with a plain reading of the statute.

Moreover, the Appellate Division's discourse on the statute's legislative history, adopted by the majority, *ante* at 319, 938 A.2d at 928–29, is far from enlightening. The Legislature's expansion of the classes of people covered by the statute reinforces the statute's plain meaning. *See Sahli v. Woodbine Bd. of Educ.*, 386 *N.J.Super.* 533, 539–40, 902 *A.2d* 296 (App.Div.2006) (quoting *L.* 1937, *c.* 125 (listing specific jobs entitled to indemnification); *L.* 1938, *c.* 311 (extending indemnification to "all teachers and members of supervisory and administrative staff"); and *L.* 1955, *c.* 85 (expanding indemnification to every "person holding any office, position or employment")). The Appellate Division concluded that "the Legislature intended the term 'position' to refer to an expanded class of board employees...." *Id.* at 541, 902 *A.2d* 296. As indicated earlier, if office- and position-holders have to be employees, then the terms office and position are rendered extraneous for the purpose of determining who is entitled to indemnification under the statute.

The majority also relies on the Appellate Division's embrace of the *dicta* in *Gilborges v. Wallace*, 78 *N.J.* 342, 396 *A.2d* 338 (1978). *Ante* at 319, 938 A.2d at 928–29 (citing *Sahli, supra,* 386 *N.J.Super.* at 542, 902 *A.2d* 296). In *Gilborges,* a truck collided with a vehicle driven by a student returning from a school activity. *Gilborges v. Wallace,* 153 *N.J.Super.* 121, 126–27, 379 *A.2d* 269

(App.Div.1977), *aff'd in part, rev'd in part,* 78 *N.J.* 342, 396 *A.*2d 338 (1978). A passenger in the student's vehicle was injured and sued the truck driver, the student driver, and the student's school board. *Ibid.* This Court determined that the student was not entitled to indemnification under *N.J.S.A.* 18A:16–6. *Gilborges, supra,* 78 *N.J.* at 352, 396 *A.*2d 338. That the student was not an employee, officer, or position-holder in the school district should have ended the analysis. However, the Court gratuitously remarked that it "[did] not understand the legislative intent as expressed in the statute to provide indemnification to non-employees of a board of education even though some agency relationship may exist." *Ibid.* That *dicta* runs afoul of the plain meaning of the statute and finds no support in its legislative history.

I agree with the majority that, to the extent that the lawsuit targeted Sahli because of his activities as the Board's secretary pro tem, he is qualified for indemnification under *N.J.S.A.* 18A:16–6 and for coverage under the Board's liability insurance. I also agree that Sahli is not covered in his position as Solicitor by the Board's liability insurance policy. But as stated earlier, I cannot agree that Sahli, who was appointed by the Board as Solicitor, who served it faithfully, and who was sued as a result, did not hold a position under the Board.

For those reasons, I respectfully concur in part and dissent in part.

Justice LONG joins in this opinion.

Justice RIVERA–SOTO, concurring in part and dissenting in part.

To the extent the majority holds that "*N.J.S.A.* 18A:16–6 does not mandate that [a board of education] indemnify its attorney for the defense of a civil action against him in his capacity as Board solicitor[,]" and that this Board attorney is not entitled to insurance coverage for his actions as Board solicitor, *ante* at 324, 938 A.2d at 925, I concur with the majority's reasoning and result.

However, to the extent the majority also holds that "because the Board's attorney in this case was also sued in his capacity as secretary pro tem to the Board, he is entitled to indemnification for his conduct in that position" and that "he is entitled to insurance coverage as a volunteer in acting as secretary[,]" *ibid.*, I respectfully dissent substantially for the reasons so cogently stated by Judge Payne in her opinion below, *Sahli v. Woodbine Bd. of Ed.*, 386 *N.J.Super.* 533, 902 *A.*2d 296 (App.Div.2006).

*For affirmance in part/ reversal in part/remandment*—Chief Justice RABNER, and Justices LaVECCHIA, WALLACE and HOENS—4.

*Concurring in part; dissenting in part IIIA*—Justices LONG and ALBIN—2.

*Concurring in part/dissenting in parts IIIB & IV*—Justice RIVERA-SOTO—1.