**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2449-19

CHRISTOS DIKTAS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted May 3, 2021 – Decided June 1, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 2-719313.

Eric M. Bernstein & Associates, LLC, attorneys for appellant (Eric M. Bernstein, of counsel and on the briefs; Philip G. George, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jeffrey D. Padgett, Deputy Attorney General, on the brief).

PER CURIAM

The narrow issue before us concerns the disallowance of pension service time for the years in which appellant held the title of Secretary to the Board of Commissioners of a municipal redevelopment agency. For the reasons that follow, we affirm.

I.

The record reflects the following pertinent facts.

From 2002 through early 2014 appellant Christos Diktas, Esq., was appointed by the Board of Commissioners of the Garfield Redevelopment Agency ("GRA") to serve as both its attorney and the Board Secretary. During that time frame, the GRA paid Diktas an hourly rate for his attorney services, plus an annual salary ranging between $12,000 to 18,000 for his Board Secretary duties. The GRA is a public entity encompassed within the Public Employees' Retirement System ("PERS").

Diktas acknowledges his service as attorney for the GRA does not qualify him for PERS service credits. The only role as to which his pension eligibility is disputed is the secretarial position.

Starting at the GRA's inception in 2002, and recurring annually thereafter until Diktas was terminated in 2014, the GRA Board published successive

2                                                    A-2449-19

resolutions appointing Diktas each year as both Board Secretary and Attorney. Of relevance here, those resolutions stated that Diktas was being appointed as Secretary and Attorney through the no-bid process authorized by the Local Public Contracts Law ("LPCL"), N.J.S.A. 40A:11-5(a), because such roles were "professional or extraordinary" in nature.

In or about 2014, the State Division of Pensions and Benefits (the "Division") began investigating Diktas's eligibility for PERS pension service time. The Division contacted the GRA in April 2014 regarding the terms of Diktas's employment with GRA.

The investigation into Diktas's eligibility occurred as an outgrowth of a 2012 report released by the New Jersey Office of the State Comptroller entitled "Improper Participation by Professional Service Providers in the State Pension System." The Comptroller's report announced the results of a widespread audit, which revealed that a number of governmental entities within New Jersey had not complied with what is known as the "Chapter 92" pension reform legislation enacted in 2007. See L. 2007, c. 92, § 20, N.J.S.A. 43:15A-7.2.

The GRA was not mentioned in the Comptroller's report. However, the report prompted the Division to launch its own audits of several local public entities to assess their compliance with Chapter 92, including the GRA. Among

other things, the Chapter 92 legislative reform disqualified "professional services vendors" appointed by government agencies from participating in State pension funds such as PERS.  L. 2007, c. 92, § 20, N.J.S.A. 43:15A-7.2(a).[1]

_____

[1]  Section 7.2(a) provides:

> A person who performs professional services for a political subdivision of this State or a board of education, or any agency, authority or instrumentality thereof, under a professional services contract awarded in accordance with section 5 of P.L.1971, c. 198 (C.40A:11-5), N.J.S.18A:18A-5 or section 5 of P.L.1982, c. 189 (C.18A:64A-25.5), on the basis of performance of the contract, shall not be eligible for membership in the Public Employees' Retirement System.  A person who is a member of the retirement system as of the effective date of P.L.2007, c. 92 (C.43:15C-1 et al.) shall not accrue service credit on the basis of that performance following the expiration of an agreement or contract in effect on the effective date.  Nothing contained in this subsection shall be construed as affecting the provisions of any agreement or contract in effect on the effective date of P.L.2007, c. 92 (C.43:15C-1 et al.), whether or not the agreement or contract specifically provides by its terms for membership in the retirement system.  No renewal, extension, modification, or other agreement or action to continue any professional services contract in effect on the effective date of P.L.2007, c. 92 (C.43:15C-1 et al.) beyond its current term shall have the effect of continuing the membership of a person in the retirement system or continuing the accrual of service credit on the basis of performance of the contract.

In late 2014, Diktas completed and supplied to PERS a twenty-factor questionnaire, which was used to help determine his "employee/independent contractor" status. After reviewing that submission and other information, the PERS Board of Trustees (the "PERS Board") concluded in May 2015 that Diktas was ineligible for continued membership in PERS based on his service with the GRA, retroactive to January 1, 2008.

The Board noted that various GRA resolutions from 2002 through 2013 appointed Diktas through no-bid contracts permitted under the LPCL. During the first few years of that period, those annual resolutions denoted Diktas's job title with the combined term "Attorney/Secretary." The job title changed in 2008 and ensuing years, appointing Diktas simply as "Secretary." Despite that change

---

In addition, "professional services" are defined in N.J.S.A. 40A:11-2(6):

> "Professional services" means services rendered or performed by a person authorized by law to practice a recognized profession, whose practice is regulated by law, and the performance of which services requires knowledge of an advanced type in a field of learning acquired by a prolonged formal course of specialized instruction and study as distinguished from general academic instruction or apprenticeship and training. Professional services may also mean services rendered in the provision or performance of goods or services that are original and creative in character in a recognized field of artistic endeavor.

in nomenclature, the PERS Board found that Diktas's job duties with the GRA had "remained unchanged."

In its decision, the PERS Board focused only upon Diktas's work for the GRA after the Chapter 92 reform, which went into effect on January 1, 2008. Hence, the only period of pension fund credits at issue in this case is the period from January 2008 through the end of Diktas's service with the GRA in 2014.[2]

Diktas challenged the Board's decision, and the matter was sent to the Office of Administrative Law as a contested case. An administrative law judge ("ALJ") presided over hearings on separate dates in January 2019 and June 2019, followed by the parties' submission of post-hearing briefs.

The ALJ issued an Initial Decision on October 29, 2019, concluding that Diktas had met his burden of establishing his service as a Board Secretary for the GRA was a form of employment and had not been performed under a professional services contract. Accordingly, the ALJ recommended his reinstatement to PERS.

On January 16, 2020, the PERS Board issued a final agency decision that adopted certain factual findings of the ALJ but rejected the ALJ's legal

---

[2] The record indicates that Diktas has served in various roles for other municipalities apart from the City of Garfield. His eligibility for any pension service credits derived from those other positions is not at issue in this case.

conclusion that Diktas was eligible for PERS service credits during the 2008-2014 period.

The PERS Board found that, even though the GRA's appointment resolutions started in 2008 to separate the Secretary and Attorney positions, Diktas nonetheless had been appointed as Secretary under the "no bid" professional services language of the LPCL.

The PERS Board disagreed with the ALJ's finding that the position of GRA Secretary is "pensionable." As the PERS Board noted, that legal conclusion is "at odds with the GRA's enabling legislation," N.J.S.A. 40A:12A-11(b), which requires the Executive Director of a redevelopment agency – not its attorney – to also serve as its Secretary.

Diktas admitted the Executive Director position with GRA is not eligible for pension service credit. Consequently, the PERS Board found "it follows that, under N.J.S.A. 40A:12A-11(b), the Secretary position is also not pensionable as it is statutorily required that the [E]xecutive [D]irector serve as the [S]ecretary."

In appealing the final agency decision, Diktas argues that PERS erred by finding his service as GRA's Secretary was pursuant to a professional services contract. He emphasizes that his service as Secretary was performed under an

A-2449-19

annual resolution appointing him, with a salary set by the GRA's budget and paid biweekly and reflected in W-2 tax forms. Diktas further argues PERS improperly construed the Secretary and Attorney positions in tandem, despite the fact they entailed distinct responsibilities and separate methods of payment. In addition, Diktas contends PERS' conclusions of law are contrary to Sahli v. Woodbine Board of Education, 193 N.J. 309 (2008), an indemnification case involving a school board attorney who also served as the board's impromptu secretary at a particular meeting.

II.

Our appellate review of these issues in this administrative law case is guided by familiar principles. As a general matter, the final determination of an administrative agency is "entitled to substantial deference." In re Eastwick Coll. LPN–to–RN Bridge Program, 225 N.J. 533, 541 (2016). "A strong presumption of reasonableness must be accorded [to an] agency's exercise of its statutorily delegated duties." In re Certificate of Need Granted to the Harborage, 300 N.J. Super. 363, 380 (App. Div. 1997). This general deference to an agency's expertise has frequently been applied to final agency decisions in pension matters. See, e.g., Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J.

215, 223-4 (2009); Gerba v. Bd. of Trs., Pub. Employees' Ret. Sys., 83 N.J. 174, 189 (1980).

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). In assessing whether that burden is met, our review is guided by three inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion. In re Stallworth, 208 N.J. 182, 194 (2011).

Where, as here, an agency head or board rejects a recommendation of an ALJ, the basis for doing so must be set forth by the agency head or board with particularity. Any new or modified findings differing from the ALJ's findings must be supported by sufficient, competent, and credible evidence in the record. N.J.S.A. 52:14B-10(c).

"[A]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super.

93, 102 (App. Div. 1997)). However, despite that general deference to the agency's interpretations of the legal standards, we are not bound by them. In re N.J.A.C. 7:1B-1.1 et seq., 431 N.J. Super 100, 114 (App. Div. 2013). We ultimately must review legal issues de novo. A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339-40 (App. Div. 2009).

Having applied these principles here, we conclude the PERS Board correctly denied appellant service credits for his activities as the GRA Secretary from January 2008 through his termination in 2014. We affirm that determination, substantially for the sound reasons set forth in the PERS Board's final agency decision. We add only a few comments.

There is ample support in the record for the PERS ruling that Diktas was appointed the GRA's Secretary through a professional services agreement, and that he was not the GRA's employee. Among other things, as noted by the PERS Board in its final decision, the plain language of the GRA's appointing resolutions recites that the work of Board Secretary was "professional or extraordinary and unspecifiable." (Emphasis added). In addition, Diktas (who was involved in the drafting of the resolutions) specified his law firm's address on each resolution, rather than his personal address, which would be more typical of an employee. Further, the record reveals that on at least one occasion,

A-2449-19

other attorneys from Diktas's law office covered the Board meeting and served as Secretary in his absence.

We are unpersuaded that PERS improperly failed to distinguish Diktas's service as GRA Secretary from his service as the GRA's attorney. PERS duly recognized the differences in those roles, but logically concluded they both were undertaken through a no-bid professional services appointment.

The Supreme Court's opinion in Sahli has no bearing on this pensions service credits case. Sahli concerned whether a school board attorney was entitled to a defense and indemnification when he was sued by a citizen who was allegedly injured by certain actions at a school board meeting at which Sahli had filled in to take minutes as the board's secretary. Sahli, 193 N.J. at 312-14. The context here is fundamentally different. It does not concern whether Diktas would be entitled to be indemnified and defended if, hypothetically, he had been sued in his official capacity by a third party.

The PERS Board was not estopped from recognizing that the applicable statute, N.J.S.A. 40A:12A-11(b), requires the local redevelopment authority's Executive Director (who was not Diktas from 2008-2010) to serve as its Board

11                                                                                   A-2449-19

Secretary.[3] Although that point of law is not essential to the analysis, it provides yet another reason for defeating appellant's legal arguments that hinge upon the bona fides of his service as Secretary.

In affirming the PERS Board's ruling, we do not suggest or find that Diktas had acted inappropriately or attempted to take undue advantage of the pension statutes. We simply agree, as a matter of law, that he is not entitled to these particular service credits.

We have considered all other points raised by appellant and conclude they lack sufficient merit to be discussed here. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] We do not address whether any actions taken by Diktas as Secretary could potentially be nullified as ultra vires, or whether other legal doctrines could preclude such nullification.

A-2449-19