769 A.2d 1095 (2001)
338 N.J. Super. 464
Richard AULETTA, Petitioner/Appellant,
v.
BERGEN CENTER FOR CHILD DEVELOPMENT, Respondent/Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 2001.
Decided March 30, 2001.
*1097 Robert S. Sirota, Passaic, argues the cause for appellant, (Goldstein, Ballen, O'Rourke & Wildstein, attorneys; Mr. Sirota on the brief).
Gregory G. Gleason, East Hanover, argued the cause for respondent, (Passman Dougherty & Zirulnik, attorneys; Mr. Gleason, on the brief).
Before Judges BAIME[1], WALLACE, Jr. and CARCHMAN.
*1096 The opinion of the court was delivered by WALLACE, JR., J.A.D.
This is a workers' compensation appeal. Petitioner Richard Auletta appeals from an order for judgment in favor of respondent Bergen Center for Child Development. The judge of compensation concluded that petitioner was an independent contractor and not an employee of respondent. On appeal petitioner contends he should be considered an employee under either the right to control test or the relative nature of the work test, and that his injury arose out of and was in the course of the employment. We agree and reverse.
The evidence showed that respondent was a school for special education students. Petitioner was employed by respondent as a school psychologist for seven years. He worked two days a week, Tuesdays and Thursdays, and was paid $65.00 an hour. Petitioner worked the regular school hours, 8:30 a.m. to 2:30 p.m. He worked the same days and hours the entire seven years he was employed by respondent. At the end of each month he would submit a bill to respondent for the time that he worked the prior month. Respondent issued a 1099 federal tax form to petitioner for each of the seven years he was employed at the school. Petitioner also worked as a school psychologist one day a week at the French Town Board of Education and maintained a private practice where he worked three or four days a week. Petitioner was not under contract at the school.
At trial, petitioner testified that his primary responsibilities at the school were to conduct individual and group psychotherapy. However, he also attended field trips, cooked, set up chairs, and participated in games at the school. Although these latter activities were not included in petitioner's job description, he believed the activities were implied and expected of him.
At the beginning of the school year, Lefebvre, the school's director, would give petitioner a list of students that he was expected to work with during the school year. Each morning, Lefebvre would orally communicate to petitioner whether there were any students in crisis and direct petitioner to address those students' concerns. Petitioner stated:
the director gives the directives. She tells me how she wants a child to be treated. She tells me about any decisions that have been made since I was there last. She tells me who to call, what was decided, and what to carry out.... I learned from the beginning that if you wanted to work in this facility, that's the way the rules were.
Lefebvre testified she was a hands on director who was at the school everyday and strived to be knowledgeable about the *1098 school's daily events. She agreed that she directed petitioner to see specific students who were in crisis since the last time plaintiff was at the school, but that she would not direct the treatment plan. Lefebvre acknowledged there was a great deal of verbal communication with petitioner regarding the well being of the students.
Lefebvre agreed with petitioner that respondent supplied all materials used by petitioner at the school. These materials included various psychological tests, clerical supplies, pads of paper, pens, toys, and therapeutic games. However, it was up to petitioner to determine what particular test should be used for a specific student.
Petitioner was injured on November 5, 1998 during a staff/student tournament football game. The gym teachers would organize athletic activities for the students during the school year. Each sport lasted four to six weeks. At the end of this time period a "tournament day" would be held for that particular sport. On tournament day, the academic day would end around 9:30 or 10:00 a.m., and the tournament activities would occur during the remainder of the day. Tournament day would conclude with the students competing against the staff.
Petitioner claimed that tournament day provided a therapeutic environment for the students and fostered trust between the students and faculty. The games allowed students to learn fair play, competition, and sportsmanship. In addition, the games allowed students to see petitioner in a light other than as a psychologist. He believed the games enabled him to develop stronger bonds and a greater sense of trust with the students. Petitioner was not asked to participate in the tournament day games, but he believed "every[one] [was] expected to participate fully in all of the school activities to provide the students with the broadest, most fullest experience of the school."
Lefebvre claimed that petitioner's participation in the touch football game was voluntary and that neither she nor anyone else ever asked him to participate in the game. Lefebvre never asked petitioner whether he had his own workers compensation insurance. However, she did ask and was aware that the other part-time psychologist had insurance.
Following his injury, petitioner submitted a claim petition for damages. Respondent denied his request for workers' compensation benefits on the ground that he was an independent contractor. The compensation judge credited the testimony of Lefebvre to the extent it differed with petitioner's and found that petitioner was an independent contractor. This appeal followed.

I.
Initially, we note that the Workers' Compensation Act is remedial social legislation and should be given a liberal construction in order "to implement the legislative policy of affording coverage to as many workers as possible." Brower v. ICT Group, 164 N.J. 367, 373, 753 A.2d 1045 (2000); Torres v. Trenton Times Newspaper, 64 N.J. 458, 461, 317 A.2d 361 (1974). Moreover, we recognize that appellate courts will not disturb a finding which "could reasonably have been reached on sufficient credible evidence present in the record" considering the proofs as a whole. State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999)(quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)). Also, "due regard [should be given] to the agency's expertise where such expertise is a pertinent factor." Close v. Kordulak Brothers, 44 N.J. 589, 599, 210 A.2d 753 (1965). Although our scope of review of an agency decision is *1099 limited, we owe no special deference to an agency's interpretation of the law or legal consequences flowing from established facts. Cannuscio v. Claridge Hotel and Casino, 319 N.J.Super. 342, 347, 725 A.2d 135 (App.Div.1999).
With these principles in mind, we address petitioner's contention that he was an employee of respondent and not an independent contractor.
Under the Workers' Compensation Act, the term "employee" is "synonymous with servant, and includes all natural persons ... who perform services for an employer for financial consideration, exclusive of ... casual employment." N.J.S.A. 34:15-36. Our courts interpret "employee" broadly and include "relationships not ordinarily considered to constitute employment." Hannigan v. Goldfarb, 53 N.J.Super. 190, 195, 147 A.2d 56 (App. Div.1958). However, the Act does not include "independent contractors." Independent contractors are defined as:
one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is accomplished, but only as to the result of work.
[Lesniewski v. W.B. Furze Corp., 308 N.J.Super. 270, 280, 705 A.2d 1243 (App.Div.1998)(quoting Cappadonna v. Passaic Motors, Inc., 137 N.J.L. 661, 61 A.2d 282 (E. & A.1948)) ].
Two tests have developed to determine whether a person is an employee or an independent contractor: (1) the "right to control test" and (2) the "relative nature of the work" test. Pollack v. Pino's Formal Wear & Tailoring, 253 N.J.Super. 397, 407, 601 A.2d 1190 certif. denied, 130 N.J. 6, 611 A.2d 646 (1992). These tests have developed to assist in drawing a line "between those occupations which are properly characterized as separate enterprises and those which are in fact an integral part of the employer's regular business." Ibid. In recent years "[t]he courts have placed a greater reliance upon the relative nature of the work test," than upon the control test. Ibid. See Conley v. Oliver and Co., 317 N.J.Super. 250, 254, 721 A.2d 1007 (App.Div.1998).
"Under the control test the actual exercise of control is not as determinative as the right of control itself ... because, in many instances, the expertise of an employee precludes an employer from giving him any effective direction concerning the method he selects in carrying out his duties." Smith v. E.T.L. Enterprises, 155 N.J.Super. 343, 350, 382 A.2d 939 (App. Div.1978); Conley, supra, 317 N.J.Super. at 255, 721 A.2d 1007. The determination depends upon whether the employer had "the right to direct the manner in which the business or work shall be done, as well as the results accomplished." Kertesz v. Korsh, 296 N.J.Super. 146, 152-53, 686 A.2d 368 (App.Div.1996).
Judge Conford in his dissenting opinion in Marcus v. Eastern Agric. Ass'n, Inc. 58 N.J.Super. 584, 597, 157 A.2d 3 (App.Div. 1959), which the Supreme Court adopted in 32 N.J. 460, 161 A.2d 247 (1960), noted:
[T]he requirement of control is sufficiently met where its extent is commensurate with that degree of supervision which is necessary and appropriate, considering the type of work to be done and the capabilities of the particular person doing it. Patently, where the type of work requires little supervision over details for its proper prosecution and the person performing it is so experienced that instructions concerning such details would be superfluous, a degree of supervision no greater than that which is held to be normally consistent with an independent *1100 contractor status might be equally consistent with an employment relationship.

[Ibid.]
"Where the control test is not accepted as the dispositive factor, the focus then turns to the relative nature of the work test in deciding whether plaintiff is an employee or independent contractor." Kertesz, supra, 296 N.J.Super. at 154, 686 A.2d 368. Under the "relative nature of the work test" a court must determine (1) whether the work performed by petitioner was an integral part of the regular business of defendant; and (2) whether petitioner demonstrated "substantial economic dependence" upon the employer. Sloan v. Luyando, 305 N.J.Super. 140, 148, 701 A.2d 1275 (App.Div.1997) (citing Caicco v. Toto Brothers, Inc., 62 N.J. 305, 310, 301 A.2d 143 (1973)). If this type of relationship existed then petitioner established he was an employee.
Here, it is a difficult decision to determine whether plaintiff meets the control test. There is undisputed testimony that Lefebvre met with petitioner each work day and directed petitioner to address any emergent matters prior to his normal therapy sessions. Moreover, all of the therapeutic psychological games and the test materials used by petitioner were supplied by respondent. Nevertheless, the judge disbelieved petitioner's contention that Lefebvre also controlled some of the content of his work.
We need not decide this issue because we are convinced petitioner satisfied the relative nature of the work test. As noted above, respondent was a nonprofit school serving children with special needs. When a child came to the school, he or she previously had an Individualized Educational Plan (IEP) developed by a Child Study team. This team generally consists of a school psychologists, a social worker, and a learning teacher consultant. Petitioner would counsel the student during the year to help achieve a better learning environment for the student. If the student's IEP came up for review, petitioner might be asked to provide a recommendation for the student to continue under the present IEP or to amend the IEP. In addition to counseling the student petitioner regularly participated in other activities including tournament day games. For the seven years he worked for respondent, petitioner participated in the tournament day games. He believed that his participation enhanced his ability to counsel the students. While petitioner and other staff may not have been directed to participate in the activities, Lefebvre clearly did not instruct petitioner and other staff not to participate.
In our view, petitioner's work was clearly an integral part of respondent's regular business. He was one of two psychologists at the school, helping to provide a psychologist's presence four out of five days. The work of the psychologists assisted in the review and/or revision of the IEP of most students. Moreover, petitioner received approximately 30% of his income from respondent, which is sufficient to demonstrate an economic dependence through his employment with respondent. See Kertesz, supra, 296 N.J.Super. at 156, 686 A.2d 368 (finding that petitioner was dependent on defendant for money, even though he only worked as a sheet rocker for respondent three days a month); Conley, supra, 317 N.J.Super. at 254, 721 A.2d 1007 (finding that petitioner who was a temporary claims adjuster who worked for respondent in the same manner as other claims adjuster had a substantial economic dependence on respondent since he worked exclusively for respondent for months at a time, but not the entire year).
*1101 We conclude that petitioner satisfied the relative nature of the work test.

II
The trial judge did not determine whether plaintiff's injuries arose out of and were in the course of employment. At oral argument, respondent informed us that if we reached this issue, there was sufficient evidence in the record for us to exercise original jurisdiction to decide this issue. We agree.
The Workers' Compensation Act requires employers to compensate employees for injuries "arising out of and in the course of employment." N.J.S.A. 34:15-7. However, compensation is not required for injuries suffered during recreational or social activities, "unless such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale...." N.J.S.A. 34:15-7; Sarzillo v. Turner Construction Co., 101 N.J. 114, 501 A.2d 135 (1985); Cotton v. Worthington Corp., 192 N.J.Super. 467, 471 A.2d 56 (App.Div.1984), certif. denied, 96 N.J. 301, 475 A.2d 593 (1984).
In Sarzillo, supra, plaintiff was employed by a construction company as a carpenter and was injured while playing a paddle ball game during a paid lunch break. 101 N.J. at 115, 501 A.2d 135. The Court found that the activity was not a "regular incident of employment" because the employer/defendant did not contribute to, participate in, or encourage the activity; the employee was free to spend his lunch either on or off the premises; the employee played the game for his own amusement; and there was no special benefit to the employer. Id. at 121-22, 501 A.2d 135. The Court rejected the employee's argument that staying on the premises rather than going out for lunch benefitted the employer because the employee might be late returning for lunch. Consequently, the Court found that the activity did not produce a "benefit to the employer beyond improvement in employee health and morale" because there was no benefit to the company from improved public relations and consumer good will. Ibid. N.J.S.A. 34:15-7.
In Cotton, supra, the employee was injured while playing on the company softball team. 192 N.J.Super. at 468, 471 A.2d 56. The team played after work approximately once every two weeks at a nearby public park. Ibid. The employer supplied the balls, bats, hats and refreshments for the team. We found that the softball games were not a regular incident of employment because the games were not played on company premises and the employer's contribution to, participation in, and encouragement of the activity did not rise to a level suggesting any compulsion on employees to engage in the activity. Id. at 473, 471 A.2d 56. Since the employee could not satisfy the "regular incident of employment" test, we did not determine whether the softball games benefitted the employer beyond improved employee health and morale. Id. at 473-74, 471 A.2d 56.
Here, the tournament days at the school were a regular incident of employment. The games occurred approximately six or seven times a year, on school property, and during school hours. The regular classes were canceled for the students to participate in the games. It was expected that faculty and staff would participate in the student/faculty game. In general, six or seven of the faculty and staff members participated, including the principal, and the activity was coordinated by respondent's gym teachers.
In addition, plaintiff testified that the games provided a therapeutic environment *1102 for the students which was an obvious benefit. The games would allow students to learn fair play, competition, and sportsmanship while permitting the students to see petitioner in a light other than a psychologist. This enabled petitioner to develop stronger bonds and a greater sense of trust with the students. Lefebvre's testimony never refuted petitioner's testimony regarding the purpose and benefits of tournament day, so credibility is not an issue. Consequently, we conclude that petitioner's injuries during the football tournament arose out of and during the course of employment.
In summary, petitioner established he was an employee of respondent at the time of his injury, and that his injury arose out of and during the course of his employment. Thus, he is eligible for Workers' Compensation benefits. An appropriate judgment shall be entered by the Judge of Compensation, and the matter shall be promptly scheduled for a hearing to determine benefits.
Reversed and remanded.
NOTES
[1] Judge Baime did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.