**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2425-16T4

KENNETH WELSH,

     Plaintiff-Respondent,

v.

WARREN COUNTY SPECIAL
SERVICES SCHOOL DISTRICT,

     Defendant-Respondent,

and

HACKETTSTOWN BOARD OF
EDUCATION,

     Defendant-Appellant.

_____

Argued June 4, 2018 – Decided October 19, 2018

Before Judges Sabatino and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Warren County, Docket No. L-0379-15.

Mark G. Toscano argued the cause for appellant (Comegno Law Group, PC, attorneys; Mark G. Toscano and Brandon R. Croker, on the briefs).

Howard M. Nirenberg argued the cause for respondent Warren County Special Services School District (Nirenberg & Varano, LLP, attorneys; Howard M. Nirenberg, of counsel; Sandra N. Varano, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

This appeal involves a part-time school psychologist's claim under N.J.S.A. 18A:16-6.1 for reimbursement of attorney's fees. A parent filed an assault complaint against plaintiff after he helped remove an out-of-control student from a classroom. The parent did not appear for trial and the complaint was dismissed. Plaintiff sought reimbursement of his defense fees from defendant Warren County Special Services School District (Warren)[1], which retained and paid plaintiff, and defendant Hackettstown Board of Education (Hackettstown), which utilized plaintiff's services at one of its elementary schools. On cross-motions for summary judgment, the trial court dismissed the action against Warren, and granted judgment against Hackettstown.

Hackettstown appeals, contending that plaintiff was not a person "holding any office, position or employment under [its] jurisdiction," as N.J.S.A. 18A:16-

---

[1] A county special services school district is established to provide "for the education and treatment of children with disabilities," N.J.S.A. 18A:46-29, and is governed by its own board of education, N.J.S.A. 18A:46-31.

6 requires to qualify for reimbursement under N.J.S.A. 18A:16-6.1. In the alternative, Hackettstown argues that if plaintiff is entitled to reimbursement at all, Warren is liable. Having considered the arguments of Warren and Hackettstown in light of the record and applicable principles of law, we affirm.[2]

## I.

The facts are undisputed. Plaintiff's placement at Hackettstown's Hatchery Hill Elementary School was accomplished through two agreements: a "2013-2014 Consultant Service Agreement" (CSA) between Warren and plaintiff; and a memorandum of agreement (MOA) between Warren and Hackettstown.

Without defining the nature of plaintiff's services, or even referring to school psychology, Warren agreed, in what appeared to be a form contract with plaintiff, to "utilize the Consultant for services as an independent contractor, as needed." The evident purpose was to place plaintiff in an area school. The CSA stated that "[s]ervices shall be referred to consultant through [Warren], as needed," and plaintiff was required to accept or reject the referral within forty-eight hours. Plaintiff was required to "meet timelines and deliver services as

---

[2] Plaintiff failed to file a timely answering brief. His attorney attended, but did not participate in, oral argument.

A-2425-16T4

agreed to with [the school district's] representatives," but was purportedly granted "complete control in all aspects related to fulfilling service agreements as per the attached letter," which was either not attached, or not made a part of the record before us. Warren's board set his rate of compensation, which it would pay once plaintiff submitted invoices on his letterhead. Plaintiff had to procure his own liability, workers' compensation and automobile insurance, and to indemnify Warren for any damage caused by his negligence.

Under the MOA, also a Warren form, the special services district agreed to provide Hackettstown an unnamed part-time school psychologist from November 1, 2013, through June 30, 2014. The school psychologist would work three days a week, seven hours a day. The rate was $36,720, or $4,590 a month, plus a per diem charge if the school psychologist worked more than "180 student days." Consistent with Warren's "employment agreement," Hackettstown was required to provide "all per diem certificated personnel . . . 200 minutes of prep time per week and a duty free lunch period equal to that of the students." Such personnel were also granted personal and professional leave time subject to Warren's and Hackettstown's approval.

Plaintiff worked at Hatchery Hill for the contracted period. He possessed a State certificate to serve as a school psychologist, but was not licensed to

4

practice psychology outside the school setting. He relied solely on Warren's referrals. To get paid, he submitted vouchers to Warren, which then billed Hackettstown. Hackettstown then generated a purchase order and remitted payment to Warren, which then paid plaintiff. Neither Warren nor Hackettstown provided plaintiff with health or pension benefits. Warren did not withhold taxes and issued plaintiff a 1099 form at year's end.

Plaintiff maintained an office at the school, which required him to follow its rules and regulations. Plaintiff attended weekly and monthly child study team meetings. He communicated to parents on Hackettstown letterhead. He also attended mandatory training provided by Hackettstown to "learn how to properly tend to and restrain out of control students" so he could assist teachers. As noted, plaintiff's help removing a student from a classroom led to the assault allegation, the attorney's fees, and his demand for reimbursement after the charge was dismissed. Both Warren and Hackettstown refused.

Plaintiff then filed suit. After cross-motions for summary judgment, the court dismissed the claim against Warren and granted plaintiff judgment against Hackettstown.

A-2425-16T4

Exercising de novo review, see Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010), we affirm the award of judgment against Hackettstown and dismissal of the complaint against Warren.

Plaintiff's reimbursement claim is governed by two provisions of Title 18A that must be read together. See Bower v. Bd. of Educ., 149 N.J. 416, 423 (1997). N.J.S.A. 18A:16-6 pertains to civil actions and N.J.S.A. 18A:16-6.1 pertains to criminal and quasi-criminal proceedings. Importantly, both affect "any person holding any office, position or employment under the jurisdiction of any board of education." N.J.S.A. 18A:16-6.

Under N.J.S.A. 18A:16-6, a board of education shall "defray all costs of defending" "any civil or administrative action or other legal proceeding . . . brought against any person holding any office, position or employment under the jurisdiction of any board of education." The board's obligation covers "any act or omission arising out of and in the course of the performance of the duties of such office, position, [or] employment . . . ." Ibid. N.J.S.A. 18A:16-6.1 applies if "any criminal or quasi-criminal action" is brought against "such person" – that is, as described in section 6, "any person holding any office, position or employment under the jurisdiction of any board of education" –

provided the proceeding is dismissed or terminated in favor of the party seeking reimbursement.

The key issue is whether plaintiff is "any person holding any office, position or employment under the jurisdiction of any board of education." We do not write on a clean slate in interpreting this phrase. The Supreme Court in Sahli v. Woodbine Board of Education (Sahli II), 193 N.J. 309 (2008) addressed the provision. In so doing, the Court partly adopted, and partly rejected, our interpretation. Ibid., aff'g in part and rev'g in part Sahli v. Woodbine Bd. of Educ. (Sahli I), 386 N.J. Super. 533 (App. Div. 2006).

Ronald W. Sahli, a board of education solicitor, sought reimbursement of legal fees he incurred defending an employment retaliation lawsuit that a special education administrator filed against him and the Woodbine Board of Education (Woodbine). Sahli I, 386 N.J. Super. at 537. Sahli maintained a private law practice and was also solicitor to other boards of education. Id. at 535. Woodbine hired him under a service contract, paid him by the hour and reimbursed expenses. Id. at 535-36. As solicitor, he attended board meetings, provided legal advice to board members, and negotiated contracts for the board. Id. at 536. The board did not offer Sahli health benefits or provide him a W-2. Ibid. Sahli also maintained his own professional liability insurance. Id. at 545.

The administrator's claims against Sahli focused on his activities at two executive sessions at which the board considered her fitness to perform her job and ordered a mental health examination. Sahli II, 193 N.J. at 314-15. As the board had suspected that its secretary had previously breached confidentiality, it appointed Sahli board secretary pro tem for those two meetings. Ibid. Sahli prepared minutes of those sessions, which the administrator alleged were inaccurate and designed to denigrate her. Id. at 315. Sahli's professional liability carrier provided him a defense to the administrator's lawsuit, which ultimately settled without a payment from Sahli. Id. at 316 n.1. He then sought reimbursement of his defense fees.

The trial court held that Sahli was entitled to reimbursement of his defense costs, but was not entitled to coverage under the board's policy. Sahli I, 386 N.J. Super. at 539. We reversed the former ruling, and affirmed the latter. Id. at 546. We relied on Hartmann v. Maplewood School Transportation Co., 106 N.J. Super. 187 (Law Div. 1969), aff'd o.b., 109 N.J. Super. 497 (App. Div. 1970), which denied indemnification to a bus driver employed by a transportation company under an independent contract with a school board. Sahli I, 386 N.J. Super. at 539-42. We also cited Gilborges v. Wallace, 78 N.J. 342, 352 (1978), in which the Court affirmed denial of indemnification to a

student driver, stating, "'[W]e do not understand the legislative intent . . . to provide indemnification to non-employees of a board of education even though some agency relationship may exist.'" Sahli I, 386 N.J. Super. at 542 (quoting Gilborges, 78 N.J. at 352).

We reviewed, as had Hartmann, various versions of the indemnification statute over the years, leading to the current formulation, which provides indemnification to persons "holding any office, position or employment" under a board's jurisdiction. Id. at 540-42. We found illuminating a bill statement that expressed the goal "to give protection to every person holding an office, position or employment under the jurisdiction of a board of education from financial loss arising from alleged negligence or other act happening in the discharge of his duties and within the scope of his employment." Id. at 540 (quoting Hartmann, 106 N.J. Super. at 192). The bill statement noted that then-existing law only protected "teachers and members of the supervisory and administration staff . . . ." Ibid. The bill statement expressed the intent to expand the class of indemnitees, to include "[o]ther employees including janitors who maintain and repair the grounds and buildings[,] [who] have no such protection and [whose] compensation is not such as to imply that they have been paid or are paid to assume such risks." Ibid. We concluded that the Legislature did not intend to

cover school board attorneys. Id. at 542. Rather, its goal was "to confine indemnification to Board members, employees, and students preparing for teaching careers."[3] Id. at 543.

Sahli apparently sought indemnification on the ground that the statute offered indemnification not only to employees, but also to holders of an office or a position under a board's jurisdiction. We were not persuaded. We concluded that a lack of clarity in our case law regarding "the distinctions developed between office, position and employment . . . provide[s] fuel for the argument that a determination of this case should not turn on the divination of some special significance to the word 'position' as it has appeared in the indemnity statute since 1955." Id. at 543-44. We noted that "'positions' have remained firmly lodged within the category of employment to which Sahli does not belong." Id. at 544.

We specifically rejected Sahli's argument that he was entitled to indemnification because he was functioning as the board secretary, and "he would have been entitled to indemnification if he had been a school board member or employee functioning as secretary . . . ." Id. at 544. We held that

_____

[3] We discussed subsequent amendments extending indemnification to student teachers. Id. at 541.

"Sahli did not act in the capacity of a scrivener, as he claims." Ibid. Rather, the administrator's claims in her lawsuit pertained to Sahli's role as a legal advisor. Ibid. As a final observation, we noted that Sahli did not present a compelling equitable ground for granting indemnity. Unlike "teachers and other school personnel," Sahli had his own liability insurance "to cover risks such as that to which he was exposed" in the administrator's lawsuit. Id. at 545.

The Supreme Court agreed that a solicitor of a school board was not entitled to indemnification as a "person holding any office, position or employment" of a school board. Sahli II, 193 N.J. at 319. The Court noted the appellate panel's conclusion that "the Legislature's 'focus was solely upon school board members and school employees and those preparing for teaching careers.'" Ibid. (quoting Sahli I, 386 N.J. Super. at 542). The Court stated it was "in substantial accord with the reasoning of the Appellate Division and adopt[ed] it as [its] own." Ibid.

However, parting company with the panel, the Court held that Sahli was entitled to indemnification as the board secretary pro tem. Id. at 319-20. The Court noted it was undisputed that the regular board secretary would have been covered as a person holding a position of the board. Without elaborating on the distinction between the holder of a "position," and the holder of an "office" or

"employment," the Court cited statutory provisions defining a board secretary's duties. Sahli II, 193 N.J. at 320 (citing N.J.S.A. 18A:17-5, -14.1). Notably, the Supreme Court did not wade into the murky waters of old cases that attempted to distinguish an office, position and employment in connection with the "no work, no pay" doctrine, which the Court interred in State v. International Federation of Professional and Technical Engineers, Local 195, 169 N.J. 505, 535 (2001).

The Court concluded that Sahli should not be denied indemnification simply because he held the board secretary "position" temporarily. Sahli II, 193 N.J. at 320. The Court held that some of the administrator's claims pertained to Sahli's work as board secretary pro tem and not as solicitor; and to that extent, he was entitled to indemnification. Ibid.

The Court also held that Sahli was entitled to coverage under the board's policy. Id. at 321-23. The policy excluded independent contractors, but it covered "volunteers." Id. at 322. The Court held that in his role as board secretary pro tem, Sahli was acting as a volunteer. Id. at 322-23.[4]

---

[4] The opinion does not expressly indicate whether Sahli was unpaid for the time he served as temporary board secretary.

Applying these principles, we are satisfied that even if plaintiff were deemed an independent contractor and not an employee of either Warren or Hackettstown, he held a position under Hackettstown's jurisdiction. Therefore, we need not attempt to determine, on this limited record, whether plaintiff would be accurately described as an independent contractor.

It is unclear which of the several tests would be appropriate to determine whether plaintiff was an employee under N.J.S.A. 18A:16-6.1. Hackettstown contends the issue is controlled by the "ABC" test. "ABC" refers to the first three subparagraphs of N.J.S.A. 43:21-19(i)(6), which defines "employment" for purposes of the Unemployment Compensation Law, see Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor, 125 N.J. 567, 580-87 (1991), and for purposes of the Wage Payment Law, Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301 (2015). However, our Legislature and courts have used different tests in other contexts. See, e.g., N.J.S.A. 43:15A-7.2 (adopting Internal Revenue Service regulations and policy to determine if a person is an independent contractor and therefore ineligible for pension benefits); see also Gil v. Clara Maass Med. Ctr., 450 N.J. Super. 368, 391 (App. Div. 2017) (Ostrer, J., concurring) (reviewing various statutory and common law tests for determining employment status and noting that, in selecting the appropriate test, "a court

must look to the specific statute's terms and purpose or the underlying goals of the common law doctrine"). As Sahli's status as an independent contractor was apparently undisputed, the Supreme Court did not address the question. Absent the necessity to do so here, we decline to ascertain which test would be appropriate.

We do note, however, that there are striking distinctions between plaintiff's situation and Sahli's. Plaintiff did not maintain his own psychology practice. He worked only as a school psychologist, and, it appears, only at Hatchery Hill. He used school letterhead, and worked out of an office at the school. As a professional, plaintiff presumably controlled significant aspects of his practice; yet, the school imposed its own rules and regulations, and required plaintiff to participate in its training program for the handling of out-of-control students. Plaintiff's situation is also unlike the bus driver's in Hartmann. The bus driver was employed by the bus company, which in turn contracted with the school board. No non-school intermediary employed plaintiff.

Were we to import the test utilized to determine eligibility for workers' compensation, plaintiff would apparently qualify as an employee. Applying the "nature of the work" test, we held in Auletta v. Bergen Center for Child Development, 338 N.J. Super. 464 (App. Div. 2001), that a part-time school

14

psychologist for a non-profit school for children with special needs was an "employee" under the Workers' Compensation Act. The psychologist worked two days a week, was paid by the hour after he submitted vouchers, received a 1099 form, maintained a private practice, and served another school. Id. at 468. His work accounted for less than a third of his income. Ibid. Yet, we held he was an "employee" because, as a school psychologist, he was an integral part of the school and economically dependent on it. Id. at 473.[5]

However, whatever the appropriate test for "employment" under N.J.S.A. 18A:16-6.1, we are satisfied that plaintiff held a "position." Hackettstown misplaces reliance on Hartmann and Sahli I in arguing that indemnification is limited to officers or employees of a board. In so doing, Hackettstown reads "position" out of the statute. In his dissent in Sahli II, Justice Albin criticized

---

[5] We recognize that the Workers' Compensation Act is interpreted liberally, "to implement the legislative policy of affording coverage to as many workers as possible." Auletta, 338 N.J. Super. at 470 (quoting Brower v. ICT Group, 164 N.J. 367, 373 (2000)). However, as we noted in Sahli I, 386 N.J. Super. at 540, the Legislature's purpose in adopting the "office, position or employment" formulation was to expand indemnification to other employees who serve the school. While Hackettstown relies on plaintiff's alleged independent-contractor status, we doubt the Legislature contemplated the possibility that school boards would resort to independent-contractor arrangements, to fill staff slots that might previously have been held by employees, and thereby frustrate the beneficent purpose of the statute. See Gil, 450 N.J. Super. at 391 (Ostrer, J., concurring) (noting that "contingent" workers – including contract workers – account for a growing share of the workforce).

15

Sahli I for its view that "position" simply encompasses "an expanded class of board employees," Sahli II, 193 N.J. at 326 (Albin, J., dissenting) (quoting Sahli I, 386 N.J. Super. at 541). The Justice stated, "[I]f office- and position-holders have to be employees, then the terms office and position are rendered extraneous . . . ." Ibid. That would violate a court's obligation "to give meaning to each word of the statute and to avoid any construction that renders language useless." Id. at 325 (citing Green v. Auerbach Chevrolet Corp., 127 N.J. 591, 598 (1992).

Although the Sahli II majority did not adopt Justice Albin's view that a board solicitor holds a "position," the Court nonetheless infused independent meaning into the term "position," and rejected the premise that a position holder must be an employee. The Court held that Sahli occupied a "position" in his stint as board secretary pro tem, yet the Court held that Sahli was not an employee. Instead, he was a "volunteer" while serving as temporary board secretary.[6] The Court also did not ground the duty to indemnify on a finding

---

[6] In another context, we have held that a person may hold an office or position without being a direct public employee. Bevacqua v. Renna, 213 N.J. Super. 554, 560 (App. Div. 1986). Applying N.J.S.A. 2C:51-2, the plaintiff was disqualified from licensure as a construction code official because he was convicted of an offense touching on his "office, position or employment." Id. at 558. We held it that it made no difference whether the code official worked directly for a municipality or "on behalf of a private on-site inspection and plan review agency" when he committed his prior offense. Ibid. He still violated a public trust.

that Sahli held an office. Indeed, the Court stated that a regular board secretary "would be covered . . . as a person holding a 'position' of the Board."

Although the Court did not chart the boundaries of the term "position," we surmise that a weighty consideration is statutory recognition. In finding that "board secretary" is a "position," the Court referred to N.J.S.A. 18A:17-5, which addresses appointment of board secretaries, and authorizes setting compensation if the board secretary is not simultaneously a board member; and to N.J.S.A. 18A:17-14.1, which authorizes appointment of a school business administrator as a board secretary.

The position of school psychologist also enjoys statutory, as well as regulatory, recognition. See N.J.S.A. 18A:37-20 (authorizing appointment of school psychologist as school anti-bullying specialist); N.J.S.A. 18A:40A-14 (granting civil immunity to school psychologists, among others, who in good faith report student substance abuse); N.J.S.A. 18A:46-5.1 (requiring every school board to provide child study team services, and requiring that child study teams include a school psychologist); N.J.A.C. 6A:9B-14.9 (describing qualification for holding "standard educational services certificate with a school psychologist endorsement," authorizing the holder to serve as a psychologist for pre-school through twelfth grade). We conclude that as a school psychologist

at the Hatchery Hill school, plaintiff held a position under Hackettstown's jurisdiction.

We briefly address Hackettstown's contention that if plaintiff does qualify for reimbursement, Warren should bear the responsibility, not Hackettstown. We are unpersuaded. Hackettstown relies primarily on the contractual relationship between Warren and plaintiff. Hackettstown places undue weight on plaintiff's financial relationship with Warren; and on isolated references to "employee" and "employee agreement" in the CSA and MOA. However, as Sahli II made clear, a financial relationship is not essential to a reimbursement claim. Sahli was a volunteer board secretary pro tem. The critical point is that plaintiff served as a school psychologist in a Hackettstown school; he submitted to Hackettstown rules, regulations, and training; and he participated in child study team meetings for Hackettstown students with other Hackettstown staff. In doing so, plaintiff held his position "under the jurisdiction" of Hackettstown.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2425-16T4